**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | ) <br> ) <br> ) Case No. 1:12-cv-1545 |
| Plaintiff, | ) <br> ) |
| v. | ) **JURY DEMAND** <br> ) |
| ALL WEB LEADS, INC., | ) <br> ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, Progressive Casualty Insurance Company ("Progressive"), for its Complaint against Defendant All Web Leads, Inc. ("Defendant"), demands a jury trial and alleges as follows:

**NATURE OF ACTION**

1. This action arises from Defendant's unauthorized purchase and use of the PROGRESSIVE mark in commerce as an Internet search engine keyword that causes Defendant's advertisements to appear in search results when a consumer enters a search query that includes the PROGRESSIVE mark.

2. Defendant's actions are not authorized by Progressive and represent an effort to trade on the valuable goodwill and reputation associated with Progressive and its well-known marks; are likely to cause confusion with regard to the affiliation or connection between Defendant and Progressive, and with regard to the source, sponsorship, or approval of Defendant's services; and constitute infringement, false designations of origin, dilution by tarnishment and blurring, and unfair competition in violation of the Lanham Act (15 U.S.C.

1

§§1051 et seq.) and related Ohio laws.

3. Progressive seeks, among other remedies, injunctive and monetary relief for injuries that have been, and will continue to be, caused by Defendant's unauthorized use of the PROGRESSIVE mark.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant because Defendant has engaged in business activities in, and directed to, the State of Ohio and this Judicial District, and because Defendant has knowingly committed tortious acts aimed at, and causing harm within the State of Ohio and this Judicial District. In addition, Defendant is subject to the personal jurisdiction of this Court at least due to Defendant's interactive websites, which, upon information and belief, solicit customers and are accessible from this District.

5. This Court has jurisdiction over the claims in this Complaint pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338, and 1367.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§1391(b) and 1391(c). A substantial part of the events giving rise to the Progressive's claims occurred in this Judicial District and a substantial part of the property that is the subject of the action is situated in this District. Among other things, Progressive, which owns the well-known marks at issue in this case, is located in this Judicial District; and a substantial portion of the harm directly caused by Defendant's infringing and unfair acts, including damage to Progressive, its goodwill and its trademarks, has occurred and is occurring in this District.

## PARTIES

7. Progressive is a corporation organized and existing under the laws of the State of Ohio having its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio

44143. Progressive and its related companies and agents offer and sell a variety of property and casualty insurance products and engage in related services directly to consumers and through independent insurance agents.

8. Upon information and belief, Defendant is a Delaware corporation having its principal place of business at 7300 RM 2222, Building 2, Suite 100, Austin, TX 78730. Upon information and belief, Defendant's business consists of using the Internet to identify sales leads, which it then provides to insurance companies and independent insurance agencies.

## PROGRESSIVE AND ITS MARKS

9. Progressive offers, sells and services property and casualty insurance and related products and services under the PROGRESSIVE mark. Progressive's services are sold directly to consumers via its website, accessible at www.progressive.com, and through other means including applications on mobile devices and by telephone, as well as through a network of independent insurance agents located throughout the United States.

10. Progressive owns, among other registered and common law marks, U.S. Trademark Registration No. 1,844,695 for the word mark PROGRESSIVE (attached hereto as Exhibit A). This registration covers "underwriting property/casualty insurance, directors and officers liability insurance, errors and omissions insurance, inland marine insurance, and financial insurance products; namely, combination safe depository insurance, fidelity bonds, financial institution bonds; and for providing the following insurance-related services; comparative rate information services; administration of state mandated insurance plans; insurance claim services; and administration of risk retention group and purchase group."

11. Progressive has enjoyed substantial commercial success. Since its inception in 1937, Progressive has become one of the largest insurance providers in the United States.

Progressive has held a major position in the industry since the 1990's in the sale and servicing of automobile insurance over the Internet. It was the first company to sell automobile insurance policies over the Internet, and it was the first to offer online policy servicing. Progressive's website for years has been rated #1 by Keynote/ Gomez, and website performance monitoring service.

12. Progressive has spent hundreds of millions of dollars promoting its services, including on the Internet, through television advertising, through signage, and through a host of other electronic and print media, as well as through the advertising activities of its independent insurance agents.

13. As a result of Progressive's promotional efforts and its sales, the relevant consuming public has been exposed to billions of aural and visual impressions of the PROGRESSIVE mark, thus reinforcing the association of its services with a single source.

14. Progressive's use and promotion of the PROGRESSIVE mark in connection with its services has been substantially continuous and exclusive since the mark was first introduced into the United States in the 1930s.

15. Through its expenditure of substantial time, resources, and effort in continuously using and promoting the PROGRESSIVE mark for its services, Progressive has created substantial recognition, goodwill, and secondary meaning, and has acquired significant intellectual property rights, in the PROGRESSIVE mark as used in connection with those services. The PROGRESSIVE mark is inherently distinctive or has acquired distinctiveness, and is thus protectable.

16. Progressive's right to use the PROGRESSIVE mark in commerce in connection with the services identified in Registration No. 1,844,695 is incontestable under §15 of the Lanham Act, 15 U.S.C. §1065.

17. The PROGRESSIVE mark is famous, and it was famous prior to Defendant's first use of the PROGRESSIVE mark. The PROGRESSIVE mark is widely recognized by the general consuming public in the United States as a designation of source of Progressive's services.

### DEFENDANT'S UNAUTHORIZED USE OF THE PROGRESSIVE MARK

18. Upon information and belief, Defendant is a lead aggregator, whose business consists of providing sales leads to insurance companies and their insurance agents and agencies, and to other lead aggregators. To obtain these leads, Defendant owns hundreds of domain names, and upon information and belief, uses websites that are accessible through some of these domain names to collect data from consumers who are seeking information about insurance coverage and insurance rates. Websites through which Defendant conducts these activities include but are not limited to, upon information and belief, websites located at the following domain names: www.usinsuranceonline.com, www.general-auto-insurance.com, www.2insure4less.com, www.insuranceleads.com, www.givemeinsurancequotes.com, www.carinsuranceweb.com, www.free-insurance-quotes-no2.com, www.discount-car-insurance-rates.com, www.insurance-quotes-instantly.com, and www.state-insurance-online.com (collectively "Defendant's Websites").

19. A consumer who visits one of Defendant's Websites is invited to complete and submit a request for quotation form that provides Defendant with relevant information about the consumer. Upon information and belief, Defendant then provides this consumer information to

5

insurance companies and others with whom it has a contract for providing such information, and agents for insurance companies then contact the consumer to provide quotations and information about their insurance products.

20. Progressive does not knowingly accept leads generated through Defendant's Websites, nor does it provide information concerning its services or its insurance rates to Defendant. In addition, upon information and belief, information concerning Progressive's services and insurance rates is not provided to consumers on Defendant's Websites.

21. Upon information and belief, to promote its services and websites, Defendant has purchased, without Progressive's permission or authorization, keywords from Internet search engines. These keywords consist of or incorporate the PROGRESSIVE mark, and, upon information and belief, include "progressive.com," "progressive," "progressive insurance quote" and "progressive auto insurance." As a result of these keyword purchases, when a consumer enters a search term into an Internet search engine that consists of or incorporates the PROGRESSIVE mark, the search triggers the appearance of advertisements for at least one of Defendant's Websites in the sponsored results section of the search results ("Defendant's Advertisements"). In Exhibit B, some of Defendant's Advertisements are circled in shots showing search results generated from keywords listed above.

22. Consumers are likely to be confused into believing, incorrectly, that Defendant's Advertisements are placed, endorsed, sponsored and/or approved by Progressive, will provide information about Progressive or its services, and/or are related in some way to Progressive.

23. Upon information and belief, when a consumer clicks on one of Defendant's Advertisements and completes a request for quotation form provided at the linked website, Defendant directs the consumer's information to insurance companies other than Progressive, to

6

agents for those companies and/or to other lead aggregators.  These consumers are not contacted by agents for Progressive.

24. From 2009 through early 2012, Progressive repeatedly informed Defendant that it would not accept any leads from Defendant that resulted from advertisements keyed to terms including the PROGRESSIVE mark or trademarks of any other companies.

25. On March 12, 2012, Defendant informed Progressive that Defendant was going to start keying advertisements to terms including the PROGRESSIVE mark and trademarks of other insurance companies.

26. On March 14, 2012, Progressive wrote to Defendant and demanded that Defendant stop keying advertisements to terms including the PROGRESSIVE mark.  On March 21, 2012, Defendant refused to comply with Progressive's demand.

27. Upon information and belief, Defendant deliberately and willfully purchased, and continues to purchase, advertisements keyed to the PROGRESSIVE mark despite the fact that Progressive expressly objected to Defendant's keying advertisements to its trademarks or the trademarks of other companies and delivering leads as a result of such advertisements, and that consumers do not obtain information about Progressive insurance services and insurance rates as a result of visiting Defendant's Websites.

28. Defendant's actions put Progressive's valuable reputation and goodwill in the hands of Defendant, over whom Progressive has no control.

29. Progressive has been, is now, and will be irreparably harmed by Defendant's acts and, unless enjoined by this Court, Defendant will continue to engage in its unlawful acts.  There is no adequate remedy at law for the harm caused by Defendant's unlawful acts alleged herein.

## COUNT I
## Trademark Infringement in Violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1)

30. Progressive incorporates by reference Paragraphs 1 through 29, above, as though fully set forth herein.

31. Defendant's unauthorized purchase of advertisements keyed to the PROGRESSIVE mark is likely to cause confusion, mistake, and/or deception.

32. The aforementioned acts of Defendant constitute infringement of federally registered marks, in violation of 15 U.S.C. §1114(1).

33. Defendant's acts and practices in violation of Section 32(1) of the Lanham Act as set forth above, have caused and, unless restrained by this Court, will continue to cause serious and irreparable harm and damage to Progressive, for which it has no adequate remedy at law.

## COUNT II
## False Designation of Origin in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)

34. Progressive incorporates by reference Paragraphs 1 through 29, above, as though fully set forth herein.

35. Defendant's unauthorized purchase of advertisements keyed to the PROGRESSIVE mark constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact, that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendant and Progressive, or as to the origin, sponsorship, or approval of Defendant's services or commercial activities by Progressive, in violation of 15 U.S.C. §1125(a).

36. Defendant's acts and practices in violation of Section 43(a) of the Lanham Act as set forth above, have caused and, unless restrained by this Court, will continue to cause serious and irreparable harm and damage to Progressive, for which it has no adequate remedy at law.

### COUNT III
### Dilution in Violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c)

37. Progressive incorporates by reference Paragraphs 1 through 29, above, as though fully set forth herein.

38. Defendant's unauthorized purchase of advertisements keyed to the PROGRESSIVE mark is likely to cause dilution by tarnishment and dilution by blurring in violation of Progressive's rights in the PROGRESSIVE mark, which is famous and has been famous since before the time that Defendant began its unlawful activities, in violation of 15 U.S.C. §1125(c).

39. Defendant's acts and practices in violation of Section 43(c) of the Lanham Act as set forth above, have caused and, unless restrained by this Court, will continue to cause serious and irreparable harm and damage to Progressive, for which it has no adequate remedy at law.

### COUNT IV
### Violation of the Ohio Uniform Deceptive Trade Practices Act, Ohio Revised Code, Title 41, Ch. 4165

40. Progressive incorporates by reference Paragraphs 1 through 29, above, as though fully set forth herein.

41. Defendant's unauthorized purchase of advertisements keyed to the PROGRESSIVE mark is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant's Services, and/or otherwise causes a likelihood of confusion or misunderstanding as to Progressive's affiliation, connection,

association with or certification of Defendant, in violation of Ohio Revised Code, Title 41, Ch. 4165.

42. Defendant's acts and practices in violation of Title 41 of the Ohio Uniform Deceptive Trade Practices Act as set forth above, have caused and, unless restrained by this Court, will continue to cause serious and irreparable harm and damage to Progressive, for which it has no adequate remedy at law.

## COUNT V
### Common Law Unfair Competition and Trademark Infringement

43. Progressive incorporates by reference Paragraphs 1 through 29, above, as though fully set forth herein.

44. Defendant's unauthorized purchase of advertisements keyed to the PROGRESSIVE mark constitutes common law unfair competition and trademark infringement because such use is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval by Progressive of Defendant's services. The public is, for example, likely to believe mistakenly that Defendant's services originate with Progressive, are licensed by Progressive, and/or are sponsored by, connected with, or related to Progressive.

45. Defendant's acts and practices constituting common law unfair competition and trademark infringement as set forth above, have caused and, unless restrained by this Court, will continue to cause serious and irreparable harm and damage to Progressive, for which it has no adequate remedy at law.

## COUNT VI
### Common Law Dilution

46. Progressive incorporates by reference Paragraphs 1 through 29, above, as though fully set forth herein.

47. Defendant's unauthorized purchase of advertisements keyed to the PROGRESSIVE mark is likely to cause dilution by tarnishment and dilution by blurring in violation of Progressive's rights in the Marks, which are famous and have been famous since before the time that Defendant began its unlawful activities, in violation of Ohio common law.

48. Defendant's acts and practices constituting common law dilution as set forth above, have caused and, unless restrained by this Court, will continue to cause serious and irreparable harm and damage to Progressive, for which it has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Progressive prays:

A) That Defendant, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them (hereinafter collectively "Defendant"), be preliminarily and permanently enjoined and restrained from:

1) Using the PROGRESSIVE mark, alone or in combination, or any marks confusingly similar to the PROGRESSIVE mark in connection with providing insurance rates, insurance quotes, insurance sales leads, or other insurance-related information or services in any context, including but not limited to use as a mark, source identifier, corporate name, or Internet search engine keyword or in any other manner likely to cause confusion or to dilute the PROGRESSIVE mark, or to otherwise cause injury to Progressive or its reputation;

2) Using the PROGRESSIVE mark, alone or in combination, or any marks confusingly similar to the PROGRESSIVE mark as part of a domain name, Internet search engine

11

       keyword, or in the metadata or source code for any web site, in connection with insurance services, including claims adjustment services;

   3) Using any other term, phrase, or design element as, or as part of, a mark, corporate name, meta data, Internet search engine keyword, or domain name in connection with insurance services, where such use is likely to result in the mistaken belief that Defendant or its services are in any way affiliated, connected or associated with Progressive; and

   4) Otherwise unfairly competing with Progressive in any manner whatsoever.

B) That, pursuant to 15 U.S.C. §1116 and principles of equity under Ohio law, Defendant be directed to file with the Court and serve upon Progressive within thirty (30) days after issuance of an injunction that incorporates the aforementioned relief (as well as any other injunctive relief) a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

C) That Progressive be awarded monetary relief in an amount to be fixed by the Court in its discretion, including (but not limited to):

   1) All profits received by Defendant as a result of its unlawful actions, said amount to be trebled due to Defendant's willful misconduct; and/or

   2) All damages sustained by Progressive as a result of Defendant's unlawful acts, said amount to be trebled due to Defendant's willful actions.

D) That the Court award to Progressive all reasonable attorneys' fees, costs and disbursements incurred by Progressive as a result of this action.

E) That the Court require Defendant to pay prejudgment interest on any and all monetary awards (in whatever form) to which Progressive is entitled.

F) That Defendant immediately cease all purchases of Internet search engine keywords, sponsored links, or similar services that comprise of or are tied to in any way the use of the PROGRESSIVE mark or any variation thereof, and that Defendant immediately terminate any contracts or agreements that may relate to Defendant's use of the PROGRESSIVE mark in this manner.

G) That Defendant immediately take all steps necessary to prohibit any website, or link thereto, that is owned, operated, or affiliated with Defendant to appear in any Internet search engine search results for any search term(s) that consist of or incorporate the PROGRESSIVE mark, or any confusingly similar variation thereof.

H) That the Court order all other and further relief that it deems proper and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Progressive hereby respectfully requests a jury trial on all issues and claims so triable.

Dated: June 15, 2012                                        Respectfully Submitted,

                                                                      */s/ Calvin P. Griffith*
                                                                       Calvin P. Griffith (Ohio Bar No. 0039484)
                                                                       cpgriffith@jonesday.com
                                                                       Meredith M. Wilkes (Ohio Bar No. 0073092)
                                                                       mwilkes@jonesday.com
                                                                       JONES DAY
                                                                       North Point
                                                                       901 Lakeside Avenue
                                                                       Cleveland, Ohio  44114
                                                                       Tel:  (216) 586-3939
                                                                       Fax: (216) 579-0212

                                                                       ***Attorneys for Plaintiff***
                                                                       ***Progressive Casualty Insurance Company***

*Of Counsel:*

BRINKS HOFER GILSON & LIONE
David S. Fleming
Laura Beth Miller
Michelle A. Miller
Joshua S. Frick
455 N. Cityfront Plaza Dr.
Chicago, IL  60611
Tel:     (312) 321-4200
Fax:    (312) 321-4299